IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

CROSS CREEK LIMITED PARTNERSHIP, a New Mexico Limited Partnership; LARRY MASON, an individual; and NINA MASON, an individual,

        Plaintiffs,

v.

PEYTON SHEA PALAIO, an individual; RMH HOLDINGS, INC., d/b/a CANNOPY CORPORATION, a Wyoming corporation; CAG HOLDINGS, LLC d/b/a COMPANIONAG, a Wyoming corporation; CAG HOLDINGS CO, LLC, a Foreign Limited Liability Company with its jurisdiction in Wyoming; LP IND., LLC d/b/a OLISTICA LIFE SCIENCES GROUP; and JORDAN PROCESS, on information and belief, a Wyoming entity.

        Defendants.

## COMPLAINT

Plaintiffs Cross Creek Limited Partnership, Larry Mason, and Nina Mason, by and through its undersigned counsel, respectfully submits its Complaint against Peyton Shea Palaio; RMH Holdings, Inc., d/b/a Cannopy Corporation; CAG Holdings, LLC d/b/a CompanionAg; CAG Holdings CO, LLC; LP Ind., LLC d/b/a Olistica Life Sciences Group; Jordan Process; and Cannopy Corporation (Defendants other than Peyton Shea Palaio are hereafter collectively referred to as "Defendant Entities"), as follows:

## PARTIES

1.    Plaintiff Cross Creek Limited Partnership ("Cross Creek") is a Limited Partnership with its principal place of business at 511 Speer Rd., Sedan, NM 88436.

2.    Plaintiffs Larry Mason ("Mr. Mason") and Nina Mason ("Ms. Mason") are individuals with their domicile at 511 Speer Rd., Sedan, NM 88436.

3.    Defendant Peyton Shea Palaio ("Mr. Palaio") is an individual who, upon information and belief, resides at 3955 Ryans Lake Ter, Cumming, GA 30040. Peyton Palaio operates a facility in Springfield, CO that processes raw industrial hemp, among other crops.

1

4. Defendant RMH Holdings, Inc., d/b/a Cannopy Corporation ("RMH") is a Wyoming corporation with its principal place of business at 1621 Central Ave, Cheyenne, WY 82001. RMH operates a facility in Springfield, CO that processes raw industrial hemp, among other crops.

5. Defendant CAG Holdings, LLC d/b/a CompanionAg ("CompanionAg") is a Wyoming limited liability company with its principal place of business at 30 N Gould St, Suite 21892, Sheridan, WY 82801. CompanionAg operates a facility in Springfield, CO that processes raw industrial hemp, among other crops.

6. Defendant CAG Holdings CO, LLC ("CompanionAg CO") is a Colorado foreign limited liability company with its jurisdiction in Wyoming and with its principal place of business at 23298 US Highway 160, Springfield, CO 81073. CompanionAg CO operates a facility in Springfield, CO that processes raw industrial hemp, among other crops.

7. Defendant LP Ind., LLC d/b/a Olistica Life Sciences Group ("Olistica") is a Wyoming limited liability company 30 N Gould St, Suite 21892, Sheridan, WY 82801. Olistica operates a facility in Springfield, CO that processes raw industrial hemp, among other crops.

8. Defendant Jordan Process, upon information and belief, is a Wyoming limited liability company with its principal place of business at 730 17th St., Suite 450, Denver, CO 80202. Jordan Process operates a facility in Springfield, CO that processes raw industrial hemp, among other crops.

## JURISDICTION AND VENUE

9. Venue is proper in this district as it is the judicial district in which a defendant resides and in which a substantial part of the events or omissions giving rise to the claim occurred. 28 U.S.C. § 1391.

10. Jurisdiction in this court is proper because no defendant named in this action resides in the same state as any plaintiff in this action, and the amount in controversy is over $75,000. 28 U.S.C. § 1332.

## FACTUAL BACKGROUND

11. This dispute concerns several agreements entered into by the Defendants and Plaintiffs with regard to the processing of raw industrial hemp (the "Hemp").

12. Larry Mason ("Mr. Mason") is the General Manager of Cross Creek.

13. Mr. Mason and his wife, Nina Mason ("Ms. Mason" and collectively, "the Masons"), own 78.96% of Cross Creek Limited Partnership ("Cross Creek").

14. The Masons own and rent farmland in New Mexico and are engaged in the business of agriculture. In particular, they have expertise in cultivating, harvesting, and selling corn and other crops.

15. Mr. Palaio is the President of Defendants RMH, CompanionAg, and CompanionAg CO.

A. *The 2019 Agreement*

16. On April 2, 2019, Mr. Palaio reached out to Mr. Mason via text regarding a venture proposition whereby the Masons would cultivate and supply Defendants hemp. Defendants would then process that hemp and produce isolate, a purified extract that contains only a single cannabinoid, which Defendants would then sell to their customers.

17. In April 2023, Mr. Palaio presented Plaintiffs with the 2019 Services and Supply Project Agreement (the "2019 Agreement"). The heading indicates that the 2019 Agreement was between Cross Creek and RMH. Exhibit 1, 2019 Agreement.

18. While the 2019 Agreement is dated March 30, 2019, it was executed in April 2019, after the Masons met with Mr. Palaio.

19. The Masons met with Mr. Palaio with regard to the venture on April 4, 2019.

20. In that meeting, Mr. Mason expressed his concern that the venture wouldn't be profitable and that he wouldn't get paid for the Hemp he would grow.

21. Mr. Palaio represented that Defendants are "pretty well stationed," and that he is "most certainly 'all in' to [the] project and… 110% committed to following through and reaching a successful endpoint."

22. Mr. Palaio further stated that he had "full and 100% confidence that there is not a single thing here that is about to stop us, apart from earthquake that splits the earth in two and it happens to be under our both of our barns," based on testing out the market, developing relationships, processing the material on a smaller scale, background experience and expertise in the commercial processing of botanicals for the manufacture of ingredients.

23. Mr. Palaio represented to the Masons that the Hemp would have "priority" to hemp produced by other growers. In other words, the Hemp produced by Plaintiffs would be processed first.

24. Based on the conversation, the Masons reasonably believed they were being presented with a lucrative, long-term business relationship.

25. Mr. Palaio represented to the Masons that he owned a FDA-approved lab at 23298 US Highway 160, Springfield, CO 81073 (the "Processing Site"), with medical grade facilities.

3

Mr. Palaio represented to the Masons that products from this facility fetch a higher price because they are food grade.

26. Mr. Palaio further represented that he was building a massive, state-of-the-art lab which would greatly increase production and profit potential.

27. In April 2019, the Masons traveled to the Processing Site and toured the lab, during which the Masons saw for themselves Defendants processing hemp in the facility.

28. Based on Mr. Palaio's representations, Cross Creek executed the 2019 Agreement.

29. Under the 2019 Agreement, the parties agreed that the Plaintiffs would grow the Hemp on 2,100 acres to supply Defendants with raw material which Defendants would then process into isolate, giving priority over Hemp supplied by the Plaintiffs over other raw materials. Exhibit 1, at 1.

30. The parties agreed that they would share in the profits as follows: Defendants would retain eighty-five (85%) of the net profit, and Defendants will remit fifteen percent (15%) of the net profit of revenues actually received to Plaintiffs.

31. Mr. Palaio represented to the Masons that, based on a harvest of 2,000 pounds of the Hemp per acre, Plaintiffs could expect to earn $40 million as their 15% cut of the Profits.

32. Because Cross Creek would not realize a profit until after the Hemp was harvested, the Masons needed to borrow monies to finance the operation.

33. Plaintiffs had trouble securing funds to finance the grow operation, because many banks were not knowledgeable regarding the cultivation of hemp and refused to loan funds to hemp operations for this reason.

34. As a result of the Masons inability to obtain funds to finance the grow operation, Defendants agreed to loan Cross Creek $500,000 to finance the grow operation (the "Bridge Loan").

35. The Plaintiffs finished planting the Hemp by May 30, 2019.

36. Plaintiffs planted 2,100 acres of the Hemp pursuant to the 2019 Agreement.

37. On September 11, 2019, Mr. Mason called Mr. Palaio to inquire about when they would receive their profit share.

38. Mr. Palaio replied that Defendants should start bringing in cash soon, which would be shared with Plaintiffs, but that finishing the new processing lab was causing a delay. He represented that the lab would be complete in around 70 days.

39. Mr. Palaio represented to Mr. Mason that Defendants would "be moving 2,000 kilo of material a week of finished products [and] that's not just domestically, but about 75% of that is internationally." He continued, stating Defendants have been sending samples out, have made different specifications for customers, and clinical work, which has done them a great deal of good in securing a number of large contracts.

40. Mr. Palaio represented to Mr. Mason that Mr. Mason had to deliver finished products in December and that his buyers are subject to terms in the sales contract, which require payment in 30 days. Mr. Palaio then stated that he would have money coming in before the end of the year and that he was "99.9% positive to that."

41. These representations turned out to be false. Defendants did not have the customers it represented it had, there was no chance that it would sell finished products in December, nor was there a potential to bring in money in December 2019.

42. The topic of conversation turned to the Bridge Loan, of which Defendants had yet to remit the full amount to Plaintiffs. Mr. Palaio stated that he would have $60,000-$90,000 for the Plaintiffs in the next few days.

43. Based on these representations, Plaintiffs continued to perform under a contract that Defendants had no intention of ever following through with.

44. On October 4, 2019, Mr. Mason called Mr. Palaio once again.

45. During this call, Mr. Palaio represented that the new lab was near completion and that customers are "chomping at the bit to get large amounts of hemp." Mr. Palaio represented that he had a number of customers "teed up for 1000 kilogram quantities of material," that he's given them samples, started the engagement process, and was finalizing contracts with some of them, with a couple of them already having contracts in place.

46. Mr. Palaio represented to Mr. Mason that it looks like they'd have revenue before the end of the year and that once Plaintiffs' Hemp arrived, they'd honor his priority. This meant that Defendants would stop processing hemp from other suppliers and start processing Cross Creek's Hemp.

47. Mr. Palaio represented that the facility will have the capability to process isolate which sells for a price that is 40-50% higher price than isolate.

48. Again, these representations were false. Defendants did not have customers "teed up" as it represented it had. Defendants had no intention of honoring Plaintiffs' priority, no intention of processing the Hemp it supplied and, thus, Plaintiffs would not yield revenue on the Hemp by the end of 2019.

49. In November 2019, Plaintiffs harvested 800,000 pounds of Hemp. This translates to approximately 300 pounds of Hemp per acre.

5

50. Plaintiffs delivered the Hemp to Defendants at the Processing Site in November and December of 2019.

51. Defendants never paid Cross Creek profits for the Hemp Plaintiffs delivered.

52. On December 13, 2019, Mr. Palaio represented to Mr. Mason that the new lab would be operational in the first week of January and that he has "a bunch" of people to whom he had committed selling material to, which he must get processed and moving.

53. Mr. Palaio further represented to Mr. Mason that, because a lot of his clients are overseas, they are still alright with paying a higher price for the Hemp than market price in the United States.

54. These statements turned out to be false. Mr. Palaio represented the demand and value for the finished products to be processed from the Hemp Plaintiffs were to provide.

55. Upon information and belief, the Hemp from the 2019 Agreement was never processed.

56. Plaintiffs suffered actual and consequential damages as a result of Mr. Palaio and RMH's breach of the 2019 Agreement.

57. Specifically, Plaintiffs suffered damages in the form of lost profits from the 2019 Agreement because, (1) Plaintiffs had to borrow funds to grow the Hemp, (2) Plaintiffs were deprived of profits owed to them under the 2019 Agreement, and (3) Plaintiffs incurred expenses in cultivating and harvesting the Hemp.

   B. *The Farm Lease and 2020 Agreement.*

58. Plaintiffs chose to continue doing business with Defendants in 2020, because they worried that if they chose not to do business with Defendants in 2020 that Defendants would never pay them their profit share owed to them under the 2019 Agreement.

59. Plaintiffs, in deciding to enter into another agreement to supply Hemp to Defendants in 2020, relied on the representations made by Mr. Palaio in September and October 2019 that (1) customers were "teed up," (2) the new lab would be completed, (3) the Hemp Plaintiffs supplied would be processed and sold and given priority above all other hemp produced by other growers, and (4) that they would be paid their profit share.

60. On May 9, 2020, Cross Creek and CompanionAg entered into the Farm Lease whereby Plaintiffs leased 500 acres of farm land in New Mexico to CompanionAg. *See* Exhibit 2.

61. The term of the Farm Lease is from May 9, 2020 to December 1, 2020, or when the Hemp is harvested.

62. As payment for leasing the land, CompanionAg agreed to pay Plaintiffs $350 per acre for 500 acres totaling $175,000.

63. On May 11 2020, Companion Ag, Inc. executed the Companion and Cross Creek executed the Services and Supply Project Agreement (the "2020 Agreement"). *See* Exhibit 3.

64. The warranties in the 2020 Agreement include a warranty that Companion Ag, Inc. is a corporation incorporated in Wyoming.

65. This is most certainly not accurate. Companion Ag, Inc. is not registered with the Wyoming Secretary of State, nor was it ever.

66. An exhaustive search of corporate databases suggests that Companion Ag, Inc. does not exist.

67. Counsel for RMH, CAG Holdings, LLC, and CAG Holdings CO, LLC has admitted that Companion Ag. Inc. in the 2020 Agreement refers to Defendants CAG Holdings, LLC and CAG Holdings CO, LLC (hereinafter, collectively referred to as the "CompanionAg Companies").

68. Moreover, throughout the 2020 Agreement, CompanionAg, Inc. is repeatedly referred to as Jordan Process.

69. On information and belief, the CompanionAg Companies and Jordan Process are related entities that share common leadership and management.

70. Jordan Process is a wholly owned subsidiary of Olistica.

71. Peyton Palaio, using the alias Payton Palaia, is the Chief Science Officer of Olistica.

72. Under the 2020 Agreement, CompanionAg shall "[p]rocess the [Hemp], on a prioritized basis (ahead of other material contracted to be processed by Companion AG, Inc.), for 500 acres of the Organic Land and Conventional Land (as defined herein) into 'Finished Products' that are marketable."

73. The 2020 Agreement further states CompanionAg shall "[p]rovide market for sale of Finished Products through Companion Ag, INC.'s existing customer base."

74. The 2020 Agreement provides that Cross Creek is responsible for supplying "500 acres of irrigated crop land for rent by CompanionAg," "providing irrigation on that land that is capable of 500 gallons per minute output," and "[maintenance] of all licensure required by federal, state, or local law for the cultivation of the crop."

75. Plaintiffs supplied this requisite farm land under the Farm Lease.

76. The parties agreed that Plaintiff was to receive 15% of the profits of product produced on that land with several caveats.

7

77. Among those caveats were that the parties would split profits. Cross Creek was to receive a percentage share at 16.67% if produced a yield per acre of 1000-1500 lbs/acre; 18.34% if Cross Creek produced a yield per acre of 1500-2000 lbs/acre; and 20% if Cross Creek produced a yield per acre over 2000 lbs/acre. *See* Exhibit 3, ¶ 3(a).

78. The 2020 Agreement further provided that CompanionAg was required to make Cross Creek 100% whole for their expenses in growing and harvesting the Hemp in 2020, even if no profit was made.

79. The price of the Hemp was to be calculated according to current price that Hemp is selling for. Specifically, the Agreement further provided that the "[a]mount paid will be calculated based on average pricing figures listed in the index *Hemp Benchmarks* for the month prior to the invoicing period. The price paid to growing party will be calculated using the midpoint between the listed low and assessed price on the index."

80. Again, Plaintiffs had difficulty obtaining funding for the grow operation.

81. In order to obtain funding to finance the grow operation in 2020, Mr. Mason had to use credit cards, seek funds from investors, borrow money from friends and relatives, use funds from personal savings, and sell personal items.

82. The Masons obtained approximately $4 million in funding through these measures.

83. The Masons incurred this debt personally.

84. Mr. Mason had to obtain a $5.25 million promissory note, which he now has to pay back over a 10 year period.

85. Defendants' conduct has caused Plaintiffs significant and lasting financial hardship. In order to pay back the money they borrowed, the Masons had to refinance the mortgages for both of their farms, so that they could borrow money against these properties.

86. Had Defendants performed their obligations under the 2019 Agreement, the Farm Lease, and the 2020 Agreement, the Masons would have been able to repay this debt without having to refinance the mortgages for their farms.

87. Plaintiffs planted the Hemp on the 500 acres leased under the Farm Lease in May 2020.

88. Plaintiffs harvested the Hemp in November 2020.

89. Plaintiffs transported the Hemp to Defendants at the Processing Site in November and December of 2020. At this time, Plaintiffs also stored Hemp for Defendants to accept delivery by Plaintiffs at any time.

90. The CompanionAg Companies, Jordan Process, and Mr. Palaio breached the 2020 Agreement by failing to process the Hemp Plaintiffs supplied as required by the 2020 Agreement.

91. On information and belief, CompanionAg and Mr. Palaio focused their efforts on Kratom, another product produced by Defendants, rather than giving priority to processing Plaintiffs' Hemp, as the 2020 Agreement provided.

92. Neither CompanionAg nor Mr. Palaio paid Plaintiffs rent as required by the Farm Lease.

93. By 2023, Plaintiffs realized that Defendants did not intend to perform their obligations under the 2019 Agreement, the Farm Lease, or the 2020 Agreement (collectively, the "Agreements").

94. Plaintiffs have suffered actual and compensatory damages from the CompanionAg Companies, Jordan Process, and Mr. Palaio's breach of the Agreements.

95. To date, Defendants have not paid Plaintiffs for the Hemp they delivered in 2019 and 2020. To date, Plaintiffs continue to store Hemp for Defendants and have been waiting to deliver this Hemp to Defendants upon their request.

96. Plaintiffs could have reasonably expected to receive 5.5 million as their profit share under the 2020 Agreement and $5 million as their profit share under the 2019 Agreement.

   D. *Mr. Palaio and Defendants have created a subterfuge of entities to carry out their fraud and defeat a lawful claim regarding their conduct.*

97. In February 2023, Plaintiffs realized that Defendants had no intention of following through on their obligations under the Agreements and they determined that, rather than continue to wait for Defendants to process the Hemp as they parties had agreed, they must enforce their rights by initiating this action.

98. Upon information and belief, Mr. Palaio purposefully created a subterfuge of corporate entities to perpetuate his fraud against Plaintiffs and to prevent them from receiving their benefit of the bargain under the Agreements.

99. Through this web of entities, Mr. Palaio and the Defendants have abused the corporate form, using it as both a sword and a shield to obtain an advantage in litigation.

100. Defendants RMH; CompanionAg; CompanionAg CO; Olistica; and Jordan Process are all alter egos of Mr. Palaio.

101. RMH is doing business as "Cannopy Corporation" (the "RMH Trade Name").

102. Peyton Palaio conducted business under a registered trade name called "Cannopy Corporation."

103. CompanionAg CO and the RMH Trade Name have the same principal address, which is the Processing Site.

104. CompanionAg and Olistica have the same registered address.

105. Olistica and Jordan Process have the same business address at 730 17th St, Ste. 450, Denver, Colorado, 80202.

106. On information and belief, the Defendant Entities are thinly capitalized.

107. Mr. Palaio is an officer at each of the Defendant Entities.

108. On information and belief, Mr. Palaio is an owner of each of the Defendant Entities.

109. On information and belief, Mr. Palaio dominates the affairs of each of the Defendant Entities.

## FIRST CLAIM FOR RELIEF
### Declaratory Judgment (Against Mr. Palaio)

110. Plaintiffs incorporate the allegations in the preceding Paragraphs as if fully set forth herein.

111. Cross Creek and Defendants entered into the 2019 Agreement and the 2020 Agreement, whereby Plaintiffs were to supply Defendants with Hemp which Defendants would then process into isolate.

112. Plaintiffs needed funding to finance their grow operation under the 2019 Agreement and the 2020 Agreement.

113. Defendants agreed to loan Plaintiffs the Bridge Loan as financing for the grow operation.

114. Defendants materially breached the 2019 Agreement and the 2020 Agreement by failing to process on a priority basis the Hemp Plaintiffs provided and/or by failing to pay Plaintiffs their profit share, as required.

115. Therefore, because Defendants materially breached the 2019 Agreement and the 2020 Agreement with the Plaintiffs, the obligation that Plaintiffs repay Defendants the Bridge Loan must be excused.

116. Plaintiffs seek and are entitled to declaratory judgment that they are excused from further performance under the 2019 Agreement and the 2020 Agreement, and from repaying the Bridge Loan.

117. Plaintiffs have no other adequate remedy at law to resolve the outstanding issues regarding the 2019 Agreement and the 2020 Agreement.

## SECOND CLAIM FOR RELIEF
### Breach of Contract (Against RMH and Peyton Palaio)

118. Plaintiffs incorporate the allegations in the preceding Paragraphs as if fully set forth herein.

119. Plaintiffs entered into the 2019 Agreement with RMH to share profits from the sale of "Finished Product" processed from the Hemp Plaintiffs produced.

120. RMH and Mr. Palaio were obligated to prioritize processing of the Hemp supplied by Plaintiffs.

121. RMH and Mr. Palaio failed to process the Hemp supplied by Plaintiffs and/or failed to pay Plaintiffs for, and to give priority to, the Hemp Plaintiffs cultivated, harvested, and supplied.

122. Plaintiffs substantially performed their part of the 2019 Agreement when they cultivated, harvested, and supplied the Hemp to RMH and Mr. Palaio as required by the 2019 Agreement.

123. Plaintiffs suffered actual and consequential damages as a result of Defendants' breach of the 2019 Agreement in an amount to be determined at trial.

## THIRD CLAIM FOR RELIEF
### Breach of Contract (Against the CAG Holdings, LLC, CAG Holdings CO, LLC and Peyton Palaio)

124. Plaintiffs incorporate the allegations in the preceding Paragraphs as if fully set forth herein.

125. The CompanionAg Companies, Jordan Process, and Mr. Palaio entered into the 2020 Agreement and the Farm Lease with Plaintiffs.

126. The CompanionAg Companies and Jordan Process are both named and used interchangeably in the 2020 Agreement.

127. The CompanionAg Companies, Jordan Process, and Mr. Palaio failed to process the Hemp supplied by Plaintiffs; they failed to give priority to processing the Hemp Plaintiffs supplied, and they failed to pay Plaintiffs their profit share, under the 2020 Agreement.

128. The CompanionAg Companies and Mr. Palaio further failed to pay Plaintiffs rents due under the Farm Lease.

11

129. The CompanionAg Companies, Jordan Process, and Mr. Palaio further breached their warranty that CompanionAg, Inc. is a corporation incorporated in Wyoming.

130. Plaintiffs substantially performed their part of the contract when they cultivated, harvested, and supplied "Raw Material" to the CompanionAg Companies, Jordan Process and Mr. Palaio as required by the 2019 Agreement.

131. Plaintiffs further complied with their obligations under the Farm Lease by cultivating the Hemp on the land leased to the CompanionAg Companies and Mr. Palaio, to perform their duties under the 2020 Agreement.

132. Plaintiffs suffered actual and consequential damages as a result of the breach by the CompanionAg Companies, Jordan Process, and Mr. Palaio of the 2020 Agreement in an amount to be determined at trial.

## FOURTH CLAIM FOR RELIEF
### False Representation (Against All Defendants)

133. Plaintiffs incorporate the allegations in the preceding Paragraphs as if fully set forth herein.

134. Defendants made false representations of past or present facts.

135. Specifically, in the phone calls Plaintiffs had with Mr. Palaio in April, September, and October 2019, Mr. Palaio made false representations to Plaintiffs with regard to (1) the nature of the risk and return of the venture, (2) Defendants' intentions and/or ability to follow through with their contractual obligations, (3) the timing of payment under the 2019 Agreement and the 2020 Agreement, (4) the price of Hemp, and (5) the nature of and the status of contracts Defendants had with customers and potential buyers of the Hemp.

136. These facts were material. Had Plaintiffs known the truth regarding these statements, Plaintiffs would not have entered into the 2019 Agreement, the Farm Lease, or the 2020 Agreement.

137. At the time the representations were made, Mr. Palaio knew the representations were false, or was aware that he did not know whether the representations were true or false.

138. Mr. Palaio made the representations with the intent that the Plaintiffs would rely on the representations.

139. Plaintiffs relied on the representations.

140. Plaintiffs' reliance was justified.

141. This reliance caused injuries, damages, and losses to Plaintiffs in an amount to be proven at trial.

## FIFTH CLAIM FOR RELIEF
### Negligent Misrepresentation (Against All Defendants)

142. Plaintiffs incorporate the allegations in the preceding Paragraphs as if fully set forth herein.

143. Defendants gave false information to Plaintiffs.

144. Defendants gave such false information to Plaintiffs in the course of the negotiation, execution and performance of the 2019 Agreement, the Farm Lease, and the 2020 Agreement.

145. Defendants had a financial interest in these agreements.

146. Defendants gave the information to Plaintiffs for the guidance and use of Plaintiffs in the 2019 Agreement, the Farm Lease, and the 2020 Agreement.

147. Specifically, in the phone calls Plaintiffs had with Mr. Palaio in April, September, and October 2019, Mr. Palaio made negligent misrepresentations to Plaintiffs with regard to (1) the nature of the risk and return of the venture, (2) Defendants' intentions and/or ability to follow through with their contractual obligations, (3) the timing of payment under the 2019 Agreement and the 2020 Agreement, (4) the price of Hemp, and (5) the nature of and the status of contracts Defendants had with customers and potential buyers of the Hemp.

148. Defendants were negligent in communicating the information.

149. Defendants gave the information with the intent of or knowing that Plaintiffs would act in reliance on the information.

150. Plaintiffs relied on the information supplied by the Defendants.

151. This reliance on the information supplied by Defendants caused damage to Plaintiffs in an amount to be proven at trial.

## SIXTH CLAIM FOR RELIEF
### Unjust Enrichment (Against All Defendants)

152. Plaintiffs incorporate the allegations in the preceding Paragraphs as if fully set forth herein.

153. A benefit was conferred on Defendants by Plaintiffs. Specifically, Plaintiffs cultivated, harvested and supplied the Hemp, a raw material necessary in Defendants' business, and delivered the Hemp to Defendants.

154. The benefit was appreciated by Defendants.

13

155. Defendants accepted the benefit under such circumstances that it would be inequitable for it to be retained without payment of its value.

156. Specifically, Defendants caused Plaintiffs to dedicate a significant amount of land and resources to produce the Hemp through fraud and deceit. Plaintiffs did so based on the belief that Defendants would prioritize processing the Hemp. Plaintiffs could have dedicated that land to other crops in which it would have profited from.

157. Plaintiffs were damaged by Defendants' unjust enrichment in an amount to be determined at trial.

## JURY DEMAND

Plaintiffs demand a jury trial on all issues so triable.

## CONCLUSION AND PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, Cross Creek Limited Partnership, Larry Mason, and Nina Mason, respectfully request that judgment be entered in its favor as follows:

a. Granting Plaintiffs actual and compensatory damages in an amount to be determined at trial;

b. Excusing Plaintiffs from repaying the Bridge Loan due to Defendants' breach of the terms set forth in the 2019 Agreement, the Farm Lease, and the 2020 Agreement;

c. Granting Plaintiffs punitive and exemplary damages where permitted by law;

d. Granting Plaintiffs accrued interest on any judgment entered where authorized by law;

e. Granting Plaintiffs attorney's fees and costs under Section 24 of the 2019 Agreement (Exhibit 1, at 6), and under Section 25 of the 2020 Agreement (Exhibit 3, at 7) ; and

f. Any other relief deemed just and proper.

DATED:  September 11, 2023.       *s/ Scott L. Evans*
                                  Scott L. Evans, #25475
                                  Sarah M. Andrzejczak, #49037
                                  Buchalter, A Professional Corporation
                                  1624 Market Street, Suite 400
                                  Denver, CO 80202
                                  slevans@buchalter.com
                                  sandrzejczak@buchalter.com
                                  *Attorneys for Plaintiffs Cross Creek Limited Partnership, Larry Mason, and Nina Mason*

Plaintiffs' Address:
511 Speer Rd.
Sedan, NM 88436