IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:23-CV-02323-MDB

CROSS CREEK LIMITED PARTNERSHIP, a New Mexico Limited Partnership,
LARRY MASON, an individual,
and NINA MASON, an individual,

    Plaintiffs,

v.

PEYTON SHEA PALAIO, an individual,
RMH HOLDINGS, INC. d/b/a CANNOPY CORPORATION, a Wyoming corporation,
CAG HOLDINGS, LLC d/b/a COMPANIONAG, a Wyoming Limited Liability Company,
CAG HOLDINGS CO, LLC, a Foreign Limited Liability Company with its jurisdiction in Wyoming,
LP IND., LLC d/b/a OLISTICA LIFE SCIENCES GROUP, a Wyoming Limited Liability Company, and
JORDAN PROCESS, on information and belief, a Wyoming entity,

    Defendants.

---

## DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS

---

Defendants Peyton Palaio ("**Mr. Palaio**"), RMH Holdings, Inc. ("**RMH**"), CAG Holdings, LLC and CAG Holdings CO, LLC (together, "**CAG**"), and LP Ind., LLC d/b/a Jordan Process ("**LP Ind.**", and together with Mr. Palaio, RMH, and CAG, "**Defendants**") respectfully move this Court pursuant to 9 U.S.C. § 4 and C.R.S. § 13-22-207 for an Order compelling arbitration of Plaintiff Cross Creek Limited Partnership's ("**Cross Creek**") claims, and staying this lawsuit pending the outcome of such arbitration (the "**Motion**").

1

## COMPLIANCE WITH D.C.COLO.LCivR 7.1(a)

Defendants and Plaintiffs have had several communications about the parties' contractual obligations to resolve this dispute through binding arbitration. The parties attended a mediation in performance of those obligations (the contracts require mediation prior to arbitration). But Plaintiffs then filed this lawsuit, a departure from the contractual process, without conferring regarding their proposed change of venue. Defendants have since conferred to confirm whether Plaintiffs oppose the Motion and are unwilling to arbitrate. Defendants provided a draft of this Motion for Plaintiffs' consideration. Although counsel for Plaintiffs indicated that Plaintiffs would oppose the Motion, as of this filing, Defendants do not know Plaintiffs' final position. Defendants will update this conferral statement upon Plaintiffs' communication that they do not oppose the Motion.

## BACKGROUND

1. On or around March 30, 2019, RMH and Cross Creek entered into a Services and Supply Project Agreement (the "**RMH – Cross Creek Agreement**"). The RMH-Cross Creek Agreement is attached to Plaintiffs' Complaint as Exhibit 1.

2. On or around May 11, 2020, RMH and CAG entered into a separate Services and Supply Project Agreement (the "**CAG – Cross Creek Agreement**" and, together with the RMH-Cross Creek Agreement, the "**Services and Supply Agreements**"). The CAG – Cross Creek Agreement is attached to Plaintiffs' Complaint as Exhibit 3.

3. On or around May 9, 2020, CAG and Cross Creek Farms LLC[1] entered into a

---

[1] Cross Creek Farms LLC is not a Plaintiff in this lawsuit. Based on public records held by the New Mexico Secretary of State, there is no registration for an entity, dba, or otherwise, by this

2

"**Farm Lease**." The Farm Lease purported to formally, and separately, facilitate and memorialize CAG's leasing of land as called for by the CAG – Cross Creek Agreement. The Farm Lease is attached to Plaintiffs' Complaint as Exhibit 2.

4. The Services and Supply Agreements each contain the following, identical Dispute Resolution provision (the "**Arbitration Clause**"):

> 11. **Dispute Resolution.** The Parties agree to work in good faith to participate in mediation prior to any Party bringing **any legal claim related to this Agreement**. In the event mediation does not resolve a dispute, **such dispute will be determined by binding arbitration.** The arbitrator will be selected from the roster of arbitrators at Judicial Arbiter Group, Inc. in Denver, Colorado ("JAG"), unless the Parties agree otherwise. If the Parties do not agree on the selection of a single arbitrator within ten (10) days after a demand for arbitration is made, then the arbitrator will be selected by JAG from among its available professionals. The arbitration will be held in Denver, Colorado, and proceed from the Commercial Arbitration Rules of the American Arbitration Association ("AAA"), except the Parties are not required to initiate the arbitration through the AAA nor pay any associated fees to the AAA. Arbitration of all disputes, and the outcome of the arbitration, will remain confidential between the Parties except as necessary to obtain a court judgment on the award or other relief or to engage in collection of the judgment. The substantially prevailing party in the any arbitration case will be entitled to attorney's fees, costs, and other relief deemed reasonable and necessary by the arbitrator. **BY AGREEING TO BINDING ARBITRATION THE PARTIES WAIVE THEIR RIGHT TO A JURY TRIAL** AND WAIVE THEIR RIGHT TO APPEAL THE ARBITRATION AWARD UNDER MOST CIRCUMSTANCES.

Compl. Exs. 1, 3, § 11 (emphasis added).

5. In this lawsuit, Plaintiffs — Cross Creek and both Masons — brought six claims all relating to the Services and Supply Agreements. Four of Plaintiffs' claims seek to enforce and/or clarify Plaintiffs' alleged rights and/or obligations under the Services and Supply

---

name.

3

Agreements. Compl. ¶¶ 118-123 (setting forth Plaintiffs' claim for breach of the RMH-Cross Creek Agreement against RMH and Mr. Palaio, who is not a party to the contract), ¶¶ 124-132 (setting forth Plaintiffs' claim for breach of the CAG-Cross Creek Agreement and Farm Lease against CAG and Mr. Palaio, a non-party), ¶¶ 110-117 (setting forth Plaintiffs' claim for declaratory judgment excusing their performance relating to the Services and Supply Agreements), ¶¶ 152-157 (setting forth Plaintiffs' unjust enrichment claim against all named Defendants upon the same alleged bases as Plaintiffs' breach of contract claims). Plaintiffs' two other claims are against Mr. Palaio for alleged false and/or negligent misrepresentation, also relating to the Services and Supply Agreements. *Id.* ¶¶ 133-151.

6.      Plaintiffs previously sought to enforce the Arbitration Clause in relation to the allegations they now make in the lawsuit. Plaintiff Cross Creek demanded, and RMH and CAG attended, a mediation before the Honorable Ross Buchanan of the Judicial Arbiter Group ("**JAG**"). No other parties attended that mediation. *See* Email from Counsel for Plaintiffs, May 30, 2023, attached hereto as **Exhibit A** ("Claimant/Plaintiff will agree to list only RMH Holdings and CompanionAG [CAG] in the mediation caption and move forward with our scheduled June 27th mediation. We will notify JAG."). After the mediation, Cross Creek (through counsel), issued a litigation hold letter to RMH, CAG, and Mr. Palaio, stating in part:

> **We have repeatedly asserted that you are in breach of the 2019 Services and Supply Agreement, the 2020 Services and Supply Agreement, and the 2020 Farm Lease (collectively, the 'Agreements'), as discussed in the unsuccessful, June 27, 2023 Mediation (the 'Mediation')**. Additionally, Cross Creek intends to assert claims, including without limitation, (sic) fraudulent inducement, negligent misrepresentation, negligent misrepresentation, and unjust enrichment. **We intend to file an arbitration with regard to Cross Creek's claims**. We believe you possess information concerning the matters at issue in the Mediation and in the **Arbitration we intend to file** ….

4

June 28, 2023 Litigation Hold Letter, attached hereto as **Exhibit B** (emphasis added).

## LAW

This Motion is brought under the Federal Arbitration Act, 9 U.S.C. § 1 (1947), *et seq.* ("**FAA**"), with additional reference (as applicable) to the Colorado Uniform Arbitration Act, C.R.S. § 13-22-201 (2004) *et seq.* ("**CUAA**").

### I.     FEDERAL ARBITRATION ACT — FAA.

This Motion is primarily governed by the FAA because the Services and Supply Agreements and corresponding Farm Lease at issue in this lawsuit are contracts "involving commerce" that contain a written provision — the Arbitration Clause — to settle any controversy relating to the Services and Supply Agreements through arbitration. 9 U.S.C. § 2 (2022) ("A written provision in any … contract evidencing a transaction **involving commerce** to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract or as otherwise provided . . .") (emphasis added); Compl. Exs. 1, 3, § 11; *see also, e.g., Dinnen v. Kneen,* No. 16-CV-00882-PAB-STV, 2017 WL 4332494, at *2 (D. Colo. Mar. 30, 2017) ("The dispute between the parties arises out of a transaction involving commerce and is therefore governed by the FAA."); *id.,* n.4 (though both parties discussed the FAA and CUAA in their briefing, the Court found "no reason to differentiate between the relevant statutes").

Section 3 of the FAA provides for a stay of proceedings upon a showing that there is an issue involved in the lawsuit that "is referable to arbitration" under a written arbitration agreement:

5

> If any suit or proceeding be brought in any of the courts of the United States upon **any issue referable to arbitration under an agreement in writing for such arbitration**, the court in which suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, **shall** on application of one of the parties **stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement**, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3 (1947) (emphasis added); *see also, e.g., Mazza v. Air Academy Fed Credit Union*, No. 2020CV32226, 2021 WL 11669964, at *1 (Colo. Dist. Ct. Aug. 23, 2021) (ordering arbitration pursuant to the FAA and "consistent with the requirements of" the CUAA upon finding "that the FAA requires that the court '**shall on application of one of the parties** stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement'").

The public policy behind the FAA requires a "liberal reading of arbitration agreements" and strongly favors dispute resolution through arbitration where such an agreement exists. *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.,* 103 S. Ct. 927, 940 n.27 (1983) ("[T]he policy of the [FAA] requires a liberal reading of arbitration agreements"); *id.* at 941 (explaining that 9 U.S.C. § 2 "is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary."); *id.* at 940 (Congress's "clear intent" in the FAA was "to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible" through one of "two parallel devices for enforcing an arbitration agreement: a stay of litigation in any case raising a dispute referable to arbitration, 9 U.S.C. § 3, and an affirmative order to engage in arbitration, § 4.").

The Tenth Circuit applies a three-part test to determine whether a dispute and any collateral issue(s) fall within the scope of an arbitration clause. *Sanchez v. Nitro-Lift Techs., L.L.C.,* 762 F.3d

6

1139, 1146 (10th Cir. 2014) (citing *Cummings v. FedEx Ground Package System, Inc.,* 404 F.3d 1258, 1261 (10th Cir.2005)). The Court first classifies the arbitration clause as "either broad or narrow." *Sanchez,* 762 F.3d at 1146 (quoting *Cummings,* 404 F.3d at 1261). If the clause is narrow, the Court must next "determine whether the dispute is over an issue that is on its face within the purview of the clause, or over a collateral issue that is somehow connected to the main agreement that contains the arbitration clause." *Id.* "*Where the arbitration clause is narrow, a collateral matter will generally be ruled beyond its purview. Where the arbitration clause is broad, there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it." Id.* (citation omitted) (emphasis in original).

> When a contract contains an arbitration clause, there is a presumption in favor of arbitrability; that is, **an order to arbitrate should not be denied unless it may be said with positive assurance** that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. **Doubts should be resolved in favor of coverage.** The Supreme Court has held that the presumption is particularly applicable where, as in the case before us now, there is a broad arbitration clause. In such cases, *in the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail.*

*Sanchez,* 762 F.3d at 1147-48 (quoting *Local 5-857 Paper, Allied-Industrial, Chemical & Energy Workers International Union v. Conoco-Inc.,* 320 F.3d 1123, 1126 (10th Cir. 2003)) (emphasis added).

## II.     THE COLORADO UNIFORM ARBITRATION ACT — CUAA.

To the extent that the CUAA governs this Motion, either in whole or in part, that statute, and the case law interpreting it, provide a legal framework that is much like the federal equivalent.

The CUAA provides that an agreement to arbitrate "any existing or subsequent controversy

7

arising between the parties to [an] agreement is valid, enforceable, and irrevocable except on a ground that exists at law or in equity for the revocation of a contract." C.R.S. § 13-22-206(1). Under the CUAA, upon a party's filing of a motion to compel arbitration, a court "**shall stay** any judicial proceeding that involves a claim alleged to be subject to the arbitration until the ordering court renders a final decision under this section." C.R.S. § 13-22-207(6) (emphasis added).

As with federal public policy, Colorado's public policy favors dispute resolution through arbitration. *Huizar v. Allstate Insurance Co.,* 952 P.2d 342, 346 (Colo. 1998) (citing Colo. Const. art. XVIII, § 3; *City & County of Denver v. District Court,* 939 P.2d 1353, 1362 (Colo. 1997); *Dominion Ins. Co. v. Hart,* 498 P.2d 1138, 1140 (Colo. 1972); *Ezell v. Rocky Mountain Bean & Elevator Co.,* 232 P. 680, 681 (Colo. 1925); *Wilson v. Wilson,* 34 P. 175, 177 (Colo. 1893)); *see also J.A. Walker Co., Inc. v. Cambria Corp.,* 159 P.3d 126, 128 (Colo. 2007) ("Colorado law favors the resolution of disputes through arbitration."); *Gengel v. High View Homes, LLC*, 996 P.2d 233, 235 (Colo. App. 1999). The CUAA was adopted as a reflection of the General Assembly's endorsement of arbitration, "to (1) validate arbitration agreements, (2) assure an effective arbitration process, (3) provide necessary procedural safeguards, and (4) provide an efficient procedure when judicial assistance is necessary." *Huizar,* 952 P.2d at 346 (citing C.R.S. § 13-22-202).

"In recognition of this policy, courts may utilize the provisions of the [CUAA] to compel a party to honor an agreement to arbitrate." *Hughley v. Rocky Mt. HMO*, *Inc.*, 927 P.2d 1325, 1330 (Colo. 1996) (citing *Merill Lynch, Pierce, Fenner & Smith, Inc. v. Dutton,* 844 F.2d 726, 728 (10th Cir.1988)). "To facilitate that compulsion, the [CUAA] deprives the court of jurisdiction to proceed to trial where arbitration is required by agreement of the parties." *Hughley,* 927 P.2d at

8

1330 (citing *Dutton,* 844 F.2d at 728; C.R.S. § 13-22-203, 6A (1987)). "A valid, enforceable arbitration provision **divests trial courts of jurisdiction** over all questions that are to be submitted to arbitration, pending the conclusion of arbitration." *Hughley,* 927 P.2d at 1330 (citing *Mountain Plains Constructors, Inc. v. Torrez*, 785 P.2d 928, 930 (Colo. 1990)) (emphasis added). "Moreover, under the [CUAA], when a party makes application to a court and shows a provision in a written contract to submit a dispute to arbitration 'and the opposing party's refusal to arbitrate, the court shall order the parties to proceed to arbitration.'" *Hughley,* 927 P.2d at 1330 (citing C.R.S. § 13-22-204(1), 6A (1987)). District Courts have no jurisdiction to decide the merits of a dispute subject to arbitration prior to such arbitration. *Hughley,* 927 P.2d at 1330.

When deciding whether to compel arbitration under the CUAA, a court must decide: (1) whether an agreement to arbitrate exists; and (ii) whether the controversy is subject to such arbitration agreement. C.R.S. § 13-22-206(2); *Lane v. Urgitus,* 145 P.3d 672, 678-79 (Colo. 2006). "A court may refuse to compel arbitration only upon a showing that there is no agreement to arbitrate or that the issue sought to be arbitrated is clearly beyond the scope of the arbitration provision." *Gergel v. High View Homes,* LLC, 996 P.2d 233, 235 (Colo. App. 1999) (citing *Jefferson County School District No. R-1 v. Shorey,* 826 P.2d 830, 840 (Colo. 1992)). The Court is to "summarily . . . decide the issue and order the parties to arbitrate unless it finds that there is no enforceable agreement to arbitrate." C.R.S. § 13-22-207(1)(b). Where "the court finds that there is an enforceable agreement to arbitrate, it **shall** order the parties to arbitrate." C.R.S. § 13-22-207(2) (emphasis added); *see also Hughley,* 927 P.2d at 1330 (citing C.R.S. § 13-22-204(1), 6A (1987)).

Under the CUAA, when determining whether an arbitration agreement covers the dispute

9

at issue, a court is to "look at the plain language of the agreement." *Allen v. Pacheco,* 71 P.3d 375, 378 (Colo. 2003) (citing *State Farm Mut. Auto. Ins. Co. v. Stein,* 940 P.2d 384, 387 (Colo. 1997)). Courts must defer to arbitration unless the court can say "'with positive assurance' that the arbitration clause is not susceptible of any interpretation that encompasses the subject matter of the dispute.'" *Allen,* 71 P.3d at 378 (citing *City of Denver v. Dist. Ct.,* 939 P.2d 1353, 1361 (Colo. 1997)). "Moreover, a 'broad or unrestricted' arbitration clause makes the strong presumption favoring arbitration apply with even greater force." *Id.*

## ARGUMENT

**I.  UNDER THE FAA, THE ARBITRATION CLAUSE IS "BROAD" AND COVERS PLAINTIFFS' DISPUTE: THE COURT MUST REFER THE DISPUTE TO ARBITRATION AND STAY THESE PROCEEDINGS.**

Applying the FAA to the Arbitration Clause, Plaintiffs' Complaint and any collateral issue must be referred to arbitration, and these proceedings must be stayed pending the outcome.

**A. The Arbitration Clause is "Broad".**

Answering the first prong of the Tenth Circuit's test, the Arbitration Clause must be classified as "broad" because it provides for a binding arbitration of "any legal claim related" to the Services and Supply Agreements without any exemption or exception. Compl. Exs. 1, 3, § 11; *Sanchez,* 762 F.3d at 1146-47 ("Many courts have concluded that an arbitration clause applying to disputes 'arising under' or 'in connection with' the agreement constitutes a broad arbitration clause.") (citing *Brown v. Coleman Co.,* 220 F.3d 1180, 1184 (10th Cir. 2000); *P&P Indus., Inc. v. Sutter Corp.,* 179 F.3d 861, 871 (10th Cir. 1999); *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.,* 252 F.3d 218, 225-27 (2d Cir. 2001); *Collins & Aikman Prods. Co. v. Bldg. Sys. Inc.,* 58 F.3d 16, 20 (2nd Cir. 1995)).

Here, where the Arbitration Clause plainly states that the parties agreed to a binding arbitration — and that the parties, therefore, expressly waived a jury trial — for "any legal claim related" to the Services and Supply Agreements, the Arbitration Clause is a quintessentially "broad" arbitration provision. *Compare* Compl. Exs. 1, 3, § 11, *with Brown,* 220 F.3d at 1184 (an arbitration clause stating "all disputes or controversies arising under or in connection with this Agreement … will be settled exclusively by arbitration" was "the very definition of a broad arbitration clause"), *Sutter Corp.,* 179 F.3d at 871 (an arbitration clause covering "any controversy, claim, or breach *arising out of or relating to*" an agreement is a "broad one"), *and Collins,* 58 F.3d at 20 (the phrase "any claim or controversy arising out of or relating to the agreement" is "the paradigm of a broad clause").

On the other hand, the Arbitration Clause contains no language contemplating a different judicial process for dispute resolution prior to a judgment at arbitration, and no exemption for any claim(s) or issue(s) from its wide-open scope of "any legal claim related to" the Services and Supply Agreements. Compl. Exs. 1, 3, § 11. The Arbitration Clause is definitively "broad."

### B. The Arbitration Clause Gives Rise to a Presumption of Arbitrability. Any Dispute Related to the Services and Supply Agreements Must be Referred to Arbitration.

Since the Arbitration Clause is so broad, the Court need not engage in the second-step analysis to consider the ramifications of a "narrow" Arbitration Clause. *See Sanchez,* 762 F.3d at 1146 (only if the clause is narrow must the Court consider whether particular issues in the dispute are connected to the main agreement). Instead, as here, "[w]here the arbitration clause is broad, there arises a presumption of arbitrability," and the Court must Order the parties to both Services and Supply Agreements to arbitrate their dispute, including collateral matters, relating to the

11

Services and Supply Agreements. *Id.*

There would only be a basis to deny the Motion if "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Sanchez,* 762 F.3d at 1147 (quoting *Conoco-Inc.,* 320 F.3d at 1126). There can be no such interpretation here, where Plaintiffs' lawsuit *only* presents legal claims relating to the Services and Supply Agreements (Compl. ¶¶ 110-157; *see also* Background ¶ 5), and after Plaintiffs have already performed under the Arbitration Clause by demanding and attending a mediation thereunder and subsequently issuing a demand letter that previewed and threatened arbitration of the same dispute. *See* Exs. A, B; Background ¶ 6. With these facts, and the requirement that any doubts resolve in favor of coverage (*Sanchez,* 762 F.3d at 1146, 1148), the Court must refer Plaintiffs' claims to the arbitration Plaintiffs agreed to in the Arbitration Clause, and stay these proceedings pending the outcome pursuant to 9 U.S.C. § 3.

**II.   UNDER THE CUAA, THE ARBITRATION CLAUSE COVERS PLAINTIFFS' DISPUTE: THE COURT MUST REFER THE DISPUTE TO ARBITRATION AND STAY THESE PROCEEDINGS.**

Applying the CUAA to the Arbitration Clause, Plaintiffs' Complaint and any collateral issue must be referred to arbitration, and these proceedings must be stayed pending the outcome.

For the first prong of the Court's inquiry under the CUAA, there is no question that the Arbitration Clause exists. Compl. Exs. 1, 3, § 11; C.R.S. § 13-22-206(2); *Lane,* 145 P.3d at 678-79. In both the Supply and Services Agreements, the same, identical Arbitration Clause appears, setting forth the Parties' agreement "to work in good faith to participate in mediation prior to any Party bringing any legal claim related to [those] Agreement[s]" and to proceed to a "binding arbitration" for any such dispute that is not resolved by mediation. Compl. Exs. 1, 3, § 11.

Second, the dispute presented in this lawsuit — six claims for relief all revolving around the Services and Supply Agreements, and all seeking to enforce, clarify, or change Plaintiffs' rights thereunder — is covered by the plain language of the Arbitration Clause. *Id.*; Compl. ¶¶ 110-151; *Allen,* 71 P.3d at 378 (citing *Stein,* 940 P.2d at 387); C.R.S. § 13-22-206(2); C.R.S. § 13-22-207(1)(b); *Lane,* 145 P.3d at 678-79 (Colo. 2006); *Gergel,* 996 P.2d at 235 (citing *Shorey,* 826 P.2d at 840). Where the Court must resolve any doubts about the scope of the Arbitration Clause in favor of arbitration, and where the Arbitration Clause is broad and unrestricted (submitting "any legal claim relating" to the Services and Supply Agreements to a binding arbitration), the Court cannot say in such circumstances "'with positive assurance' that the [A]rbitration [C]lause is not susceptible of any interpretation that encompasses the subject matter of the dispute[,]'" and must thus refer this dispute to arbitration. Compl. Exs. 1, 3, § 11; *Allen,* 71 P.3d at 378 (citing *City of Denver*, 939 P.2d at 1364)).

Because the Arbitration Clause is a valid, enforceable agreement to arbitrate that covers the dispute presented in this lawsuit, the Court must order the Parties to arbitrate and stay these proceedings pending the outcome pursuant to C.R.S. § 13-22-207(6).

**III.    THE ARBITRATOR IS THE APPROPRIATE TRIBUNAL TO RESOLVE ANY DISPOSITIVE ISSUES CONCERNING THE CLAIMS AND/OR PARTIES TO THE ARBITRATION DISPUTE, INCLUDING POTENTIAL MOTIONS TO DISMISS.**

To the extent there are preliminary, dispositive questions, those are to be appropriately handled once this matter is referred to arbitration. At such stage, if the Complaint (or Arbitration Demand) still suffers from facial deficiencies, Defendants will raise arguments challenging the same before the assigned JAG Arbitrator who — rather than any District Court — has the authority

13

to decide any such questions. Defendants thus hereby preserve their right to litigate their arguments relating to dismissal and/or arbitrability of the claims or parties in an arbitration, as provided for under the Services and Supply Agreements and applicable law.

The Arbitration Clause provides for arbitration before JAG under American Arbitration Association's ("**AAA**") Commercial Arbitration Rules ("**AAA Rules**"). Compl. Exs. 1, 3, § 11. The AAA Rules empower the Arbitrator with discretion and authority to rule upon dispositive motions. AAA Rule R-34; R-7(a) ("The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim, without any need to refer such matters first to a court."). "A valid and enforceable arbitration provision divests the courts of jurisdiction over all disputes that are to be arbitrated pending the conclusion of arbitration." *Torrez,* 785 P.2d at 930 (citations omitted); *see also Hughley,* 927 P.2d at 1330 (citing *Torrez*, 785 P.2d at 930). "Parties who agree to submit matters to arbitration are presumed to have agreed that everything, both as to law and fact, necessary to render an ultimate decision, is included in the authority of the arbitrator." *Container Technology Corp. v. J. Gadsen Pty., Ltd.,* 781 P.2d 119, 121 (Colo. App. 1989) (citations omitted).

Defendant LP Ind. will be moving the Arbitrator for LP Ind.'s dismissal as a respondent in the arbitration because LP Ind. is not a party to any of the agreements at issue and Plaintiffs have not presented a plausible basis upon which Plaintiffs can otherwise maintain their claims against LP Ind. *See* Compl. Exs. 1, 3, § 11; Compl., generally; *N.A. Rugby Union LLC v. United States of*

14

*America Rugby Football Union,* 442 P.3d 859, 864 (Colo. 2019); C.R.C.P. 12(b)[2]; AAA Rules R-7(a), 34.

Relatedly, Defendants each preserve their right to move the Arbitrator for dismissal of Plaintiffs' various claims from the arbitration upon plausibility or other C.R.C.P. 12 grounds. AAA Rules R-7(a), 34; C.R.C.P. 12(b); *Container Technology Corp.,* 781 P.2d at 121 (citations omitted); *see also, e.g., Suez WTS Services USA, Inc. v. Aethon United BR LP*, No. 20-CV-2129-WJM-NRN, 2020 WL 6134905, at *2-8 (D. Colo. Oct. 19, 2020) (discussing, in part, the consequences of an arbitrator's denial of a party's motion to dismiss).

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant this Motion, immediately refer the dispute to arbitration before JAG in accordance with the AAA Rules, and correspondingly stay any proceedings or deadlines before this Court pending the outcome of any such arbitration. Defendants specifically request that the Court Order Plaintiffs to initiate any such arbitration proceedings by the filing of an Arbitration Demand with JAG.

Respectfully submitted this 10th day of November, 2023.

                CLARK HILL PLC

                *s/ Claire E. Wells Hanson*
                Claire E. Wells Hanson, #47072
                Darren Kaplan, #52603
                1400 Wewatta Street, Suite 550
                Denver, CO  80202
                Tel: 303-674-7000
                Email: chanson@clarkhill.com
                          dkaplan@clarkhill.com

---

[2] The Services and Supply Agreements provide for Colorado law to govern their terms. Compl. Ex. 1, § 23, Ex. 3, § 24.

*Attorneys for Defendants Peyton Palaio, RMH Holdings, Inc., CAG Holdings, LLC, CAG Holdings CO, LLC, and LP Ind., LLC d/b/a Jordan Process*

## CERTIFICATE OF SERVICE

I hereby certify that on November 10, 2023, I electronically filed this **MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Anna Alekseeva*
Anna Alekseeva, Paralegal